IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HATCHMED CORP., and | § | |
| NOVARAD CORPORATION, | § | |
| on behalf of themselves and others | § | Case No. 1:20-cv-03377 |
| similarly situated, | § | |
| | § | Judge Martha M. Pacold |
| Plaintiffs, | § | |
| | § | Magistrate Judge Jeffrey T. Gilbert |
| v. | § | |
| | § | |
| | § | |
| HEALTHCARE INFORMATION AND | § | |
| MANAGEMENT SYSTEMS SOCIETY, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEE AWARD AND
SERVICE AWARD**

## TABLE OF CONTENTS

**Pages**

I. INTRODUCTION ................................................................................................. 1

II. PROCEDURAL BACKGROUND ...................................................................... 2

III. BENEFIT TO THE CLASS............................................................................... 5

   A.  Cash Portion of the Settlement. ..................................................................... 5

   B.  The Substantial Affirmative Relief is Highly Valuable to the Class. ................ 5

IV. FEE APPLICATION ......................................................................................... 5

   A.  The Seventh Circuit Awards Attorneys' Fees Based on Contingency. ............. 5

      1.  Actual Fee Contract and the Necessity of a Contingency Fee. ....................... 7

      2.  Cases Throughout the Seventh Circuit Support the Fee Request.................... 8

      3.  The Quality of Legal Services Rendered. ................................................... 11

V. APPROVAL OF COSTS. ................................................................................. 13

VI. SERVICE AWARDS. ...................................................................................... 13

VII. CONCLUSION. .............................................................................................. 15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07-CV-2898, 09-CV-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ......................... 15

*Beesley v. Int'l Paper Co.*,
  No. 3:06-cv-703-DRH-CJP,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) (Herndon, J.) ................................................. 8, 9, 15

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ........................................................................................................... 5

*Boeing Co. v. VanGemert*,
  444 U.S. 472 (1980) ................................................................................................. 1, 5, 8

*Burford v. Cargill, Inc.*,
  2012 WL 5472118 (W.D. La. Nov. 8, 2012) ..................................................................... 10

*City of Greenville v. Syngenta Crop Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012) .................................................................................. 9

*Cont'l Ill. Sec. Litig., In re*,
  962 F.2d 566 (7th Cir. 1992) ....................................................................................... 6, 13

*Cook v. McCarron*,
  No. 92-CV-7042, 1997 WL 47448 (N.D. Ill. 1997) ........................................................... 14

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................................... 14, 15

*Dairy Farmers of Am., Inc., In re*,
  80 F.Supp.3d 838 (N.D. Ill. 2015) ..................................................................................... 9

*Florin v. Nationsbank of Georgia, N.A.*,
  34 F.3d 560 (7th Cir. 1994) .......................................................................................... 1, 6, 8

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*,
  No. 11-CV-592-WMC, 2013 WL 5745102 (W.D. Wis. Oct. 23, 2013) ............................... 9

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ....................................................................................... 5-6, 8

*George v. Kraft Foods Glob., Inc.*,
  No. 1:07-CV-1713, 2012 WL 13089487 (N.D. Ill. June 26, 2012) ...................................... 9

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-cv-660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................................... 7, 15

*Harzewski v. Guidant Corp.*,
  No. 05-cv-01009, Doc. 194 (S.D. Ind. Sept. 10, 2010) ................................................... 8

*Jenkins v. Trustmark Nat. Bank*,
  No. 05-0283, 2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) ................................ 10

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986)............................................................................. 1, 6, 8

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ..................................................................... 14, 16

*Lefemine v. Wideman*,
  133 S. Ct. 9 (2012) ................................................................................................. 6

*Martin v. Caterpillar Inc.*,
  No. 07-CV-1009, 2010 WL 11614985 (C.D. Ill. Sept. 10, 2010)............................ 8, 9

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ........................................................................................... 1, 13

*Montgomery v. Aetna Plywood, Inc.*,
  231 F.3d 399 (7th Cir. 2000)................................................................................. 6

*Nolte v. Cigna Corp.*,
  Case No. 07-2046, Doc. 413 (C.D. Ill. Oct. 15, 2013)......................................... 14

*OCA, Inc. Sec. & Deriv. Litig., In re*,
  No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ................................... 10

*Pool Prods. Distrib. Mkt. Antitrust Litig., In re*,
  2015 WL 4875464 (E.D. La. 2015) ..................................................................... 10

*Ready-Mixed Concrete Antitrust Litig., In re*,
  No. 05-0979, Doc. 732 (S.D. Ind. Mar. 31, 2009) .................................................. 7

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................... 9

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)......................... 10

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................... 10

*Spano v. Boeing Co.*,
No. 06-cv-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................... 9, 15

*Standard Iron Works v. ArcelorMittal*,
No. 08-CV-5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ................................................. 9

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) .................................................................................................... 8

*Synthroid Mktg. Litig., In re*,
264 F.3d 712 (7th Cir. 2001) ............................................................................................. passim

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) .................................................................................................... 7

*Trustees v. Greenough*,
105 U.S. 527 (1882) ................................................................................................................ 13

*Will v. General Dynamics*,
No. 06-cv-698-GPM,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)(J. Murphy) ......................................... 6, 9, 14, 15

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) .................................................................................................... 9

*Young v. Cnty. of Cook*,
No. 06-CV-552, 2017 WL 4164238 (N.D. Ill. Sept. 20, 2017) ............................................ 8-9

**Other Authorities**
Eisenberg, T. & Miller, G.P.,
Attorney Fees in Class Action Settlements: An Empirical Study,
1 J. OF EMPIRICAL LEGAL STUDIES 27-78 (March 2004) ........................................... 9-10

Latham & Watkins LLP profile,
Law.com webpage (last visited Apr. 10, 2021) ........................................................................ 1

**Treatises**
MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71,
Federal Judicial Center (2004) ................................................................................................. 5

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, § 3.13,
Am. Law Inst. (May 20, 2009) ......................................................................................... 5, 6, 12

# I. INTRODUCTION

When this matter was filed, there was significant uncertainly regarding how courts would address novel issues arising out of the COVID-19 pandemic. Nevertheless, Class Counsel agreed to pursue the claims in this case on a contingency fee basis, advancing costs, as the only law firm to seek class-wide recovery for the highly-publicized cancellation of the HIMSS 2020 conference (the "conference"). Class Counsel expected to litigate against a well-funded defendant and capable defense counsel. Here, Defendant is represented by Latham & Watkins LLP, the fourth largest, and second-highest grossing, law firm in the United States.[1]

As is customary in the Seventh Circuit, the settlement agreement provides for attorneys' fees to be paid out of the common fund. (ECF No. 35.) *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit counsels district courts to identify "the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). That is the case here. Exhibit A, Healey Decl. at ¶ 6.

Although Class Counsel initially undertook this representation on a 40% contingency fee arrangement with its client (Exhibit A, Healey Decl. at ¶ 5), Class Counsel's fee request here has been *reduced* from this figure and represents approximately 11.8% of the total likely benefit

---

[1] https://www.law.com/law-firm-profile/?id=178&name=Latham-%26-Watkins&slreturn=20210225104303#:~:text=According%20to%20the%20National%20Law,2020%20Am%20Law%20200%20ranking.

provided to the Class (cash plus credits), or one-third of the monetary recovery available plus approximately 1% attributable to the non-monetary recovery.[2] Thus, this application seeks fees at or below those deemed appropriate in the Seventh Circuit. Class Counsel respectfully requests the relief identified below.

## II. PROCEDURAL BACKGROUND

On June 8, 2020, Class Counsel filed suit on a class-wide basis against HIMSS seeking recovery for claims of breach of contract, promissory estoppel, and unjust enrichment. (ECF No. 1.) HIMSS waived service on June 29, 2020, and filed a Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint on August 25, 2020. Novarad Corporation ("Novarad") later joined this matter as a named plaintiff.

Just prior to HIMSS's Rule 12 deadline, the prospect of a meeting was raised. However, at that time, Class Counsel indicated Plaintiff would demand the production of documents and information necessary to fully analyze the claims, damages, and defenses at issue in the matter, which would likely be facilitated by the entry of a protective order to permit the free exchange of information and documents, which was entered On November 2, 2020. (ECF No. 20.)

On November 17, 2020, HIMSS and HatchMed Corp. ("HatchMed")[3] attended a full-day mediation with former Federal Judge, the Honorable Wayne Andersen (Ret.), now an independent,

---

[2] Because there are two options provided the Class under the Settlement Agreement, one option providing for $2.8 million in cash consideration (reflecting 20% of fees paid) plus an additional 40% credit, and a second option providing a 60% credit, it is not presently possible to know which option most Class Members will select. However, making the reasonable assumption that the $2.8 million cash fund will be fully subscribed, the credit balance attributable to those Class Members would be $5.6 million, for a likely minimum compensation package of $8.4 million. Of course, it is also reasonable to expect that a number of Class Members will also simply select the credit-only option, increasing the total amount of credit-based compensation to the Class.

[3] HatchMed and Novarad will be collectively referred to herein as "Lead Plaintiffs," unless context dictates otherwise.

experienced mediator of complex class action disputes with JAMS. Exhibit A, Healey Decl. at ¶ 11. In advance of that session, counsel for Lead Plaintiffs and Defendant submitted and exchanged detailed confidential statements and exhibits discussing issues of liability and damages. *Id*. at ¶ 8. In particular, Defendant submitted a draft motion to dismiss, and Plaintiff responded with briefing addressing the salient points Defendant raised in its draft motion. *Id*. Moreover, in advance of mediation, the parties exchanged documents and information relevant to the parties, claims, and defenses, which the parties reviewed. *Id*.

Although the parties made progress toward a resolution at mediation, they were unable to reach an agreement in principle, and they informed the Court of this fact on November 24, 2020. (ECF No. 23.)

The parties, however, did agree to the further exchange of information and documents, pursuant to the protective order. After attorney review, analysis, and consideration of the documents provided by HIMSS, the parties resumed discussions toward determining whether a resolution could be reached. Exhibit A, Healey Decl. at ¶ 8.

On January 11, 2020, after months of negotiation, nearly all of which were facilitated by Judge Andersen, the parties reported to the Court that they reached an agreement in principle and sought to formalize the key points of understanding in a settlement agreement. (ECF No. 26.)

In summary, by the time the matter settled, Lead Plaintiffs and Class Counsel had: (i) conducted a detailed investigation of the facts and law prior to initially filing suit, performing a comprehensive, nationwide analysis of the application of force majeure provisions, both within and without the Seventh Circuit, and corresponded with numerous exhibitors that lost fees in connection with the HIMSS 20 cancellation; (ii) analyzed and researched the benefits and detriment of forum selection and choice of law provisions in the HIMSS contract at issue; (iii)

interviewed multiple firms to act as Local Counsel in this matter; (iv) drafted the Original and Amended Complaint in this matter; (v) obtained discovery of information relevant to the Class' claims, damages, and recoverability in the case; (vi) performed attorney review of all documents and information provided by HIMSS under an obligation of confidentiality; (vii) coordinated Lead Plaintiff's document production and privilege review; (viii) provided ongoing client status updates; (ix) performed detailed briefings of legal issues surrounding the alleged contractual violations, arising out of the cancellation of the 2020 HIMSS conference, that were exchanged between the parties at and prior to mediation, in lieu of filing them; (x) prepared and exchanged detailed mediation statements addressing liability and damages issues with Defendant; (xi) presented at mediation; (xii) reviewed and analyzed significant documents produced by Defendant to confirm representations made during the mediation. Exhibit A, Healey Decl. at ¶ 8. As such, Lead Plaintiffs and Class Counsel conducted the negotiations with a thorough understanding of the strengths and weaknesses of the claims.

Following the signing of the Settlement Agreement, the parties filed a Joint Motion for Preliminary Approval of the Settlement. (ECF No. 35.) After the hearing, the Court issued its Order granting preliminary approval of the settlement and preliminarily certifying the Class for settlement purposes on March 12, 2021. (ECF No. 40.) In that Motion, Class Counsel stated that its fee request would be less than $1 million. Accordingly, Class Counsel respectfully requests approval of a fee reflecting just 11.8% of the total compensation provided under the Settlement Agreement (cash and credits), or one-third of the Common Fund plus just one percent of the substantial credits provided, in the dollar amount of $989,333.33.

Individual notices are being mailed and emailed to Class Members on this day. Since news of the Court's Order of Preliminary Approval broke online, multiple potential Class Members have

contacted Class Counsel, expressing approval of the result reached, and requesting information about how to "join" the Class. Exhibit A, Healey Decl. at ¶ 9. Based on this, and as set forth in detail below, Class Counsel respectfully requests the approval of this fee application, and the other relief identified herein.

### III. BENEFIT TO THE CLASS

**A.   Cash Portion of the Settlement.**

Under the Settlement Agreement, HIMSS has been required to create a $2.8 million Common Fund answerable to the Claims of the Class, as set forth in detail in the Motion for Preliminary Approval. (ECF No. 35.)

**B.   The Substantial Affirmative Relief is Highly Valuable to the Class.**

In addition to $2.8 million in cash, the settlement includes substantial affirmative relief, which must be considered in evaluating the overall benefit to the Class. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.71, at 337, Federal Judicial Center (2004); PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, § 3.13, Am. Law Inst. (May 20, 2009); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an overemphasis on exclusively monetary "damages" that might "shortchange" other meaningful relief).

Here, the additional benefit is, at a *minimum*, a 40% credit of fees spent by the member on the conference up to a *maximum* of a 60% credit. Thus, assuming that the entire $2.8 million Common Fund is subscribed (reflecting the 20% value), the remaining 40% provided would reflect $5.6 million in credits –$8.4 million in total.

### IV. FEE APPLICATION

**A.   The Seventh Circuit Awards Attorneys' Fees Based on Contingency.**

Under the "common-fund" doctrine, class counsel that obtains a settlement or judgment creating a commonly held fund for the benefit of the class is entitled to a reasonable fee drawn

from that fund. *See, e.g.*, *Boeing*, 444 U.S. at 478. The Seventh Circuit uses the percentage basis rather than a lodestar or other basis when determining a reasonable fee. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *Florin*, 34 F.3d at 566; *Will v. General Dynamics*, No. 06-cv-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010)(J. Murphy) ("The Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee"). The "percent-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on **both** the monetary and the nonmonetary value of the settlement." PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, § 3.13(b)(emphasis added); *see also, Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012). In this case, the evidence is clear that the market for Class Counsel's services universally results in contingent-fee arrangements. Exhibit A, Healey Decl. at ¶ 6.

To grant a fee petition in a class action settlement, the Seventh Circuit requires the district court simply to determine whether the fee requested is within the range of fees that would have been agreed to at the outset of the litigation in an arm's length negotiation in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *See Synthroid*, 264 F.3d at 718. Thus, in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This requires the district judge to

6

"ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff*, 786 F.2d at 326. Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered." *In re Ready-Mixed Concrete Antitrust Litig*., No. 05-0979, ECF No. 732 at 14 (S.D. Ind. Mar. 31, 2009).

To perform this analysis, the Seventh Circuit has directed courts to look at three factors in determining the "market rate." *Taubenfeld v. AON Corp*., 415 F.3d 597, 599–600 (7th Cir. 2005). They are: (a) actual fee contracts that were privately negotiated for similar litigation; (b) information from other cases, and (c) the quality of legal services rendered. *See id*. All these factors support the requested award.

In light of these inquiries, the question is simply whether Class Counsel's fee request of 11.8% of the total benefit provided under the Settlement Agreement (cash plus credits), alternatively measured as one-third of the estimated value of the settlement plus one percent of the credit value, was reasonable at the inception of this litigation. *See Synthroid*, 264 F.3d at 718. The following analysis discloses that it was.

### 1. Actual Fee Contract and the Necessity of a Contingency Fee.

The Seventh Circuit considers first the fee agreed to between Class Counsel and Lead Plaintiff, in addition to considering similar fees in the marketplace. *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-cv-660-DRH, 2018 WL 6606079, at *7–9 (S.D. Ill. Dec. 16, 2018). "The first benchmark" of the market rate "is actual agreements" between plaintiff and counsel. *Synthroid*, 264 F.3d at 719.

In this case, an arm's length contract for representation between competent counsel and the Class at the inception of this litigation would necessarily be on a contingency basis. Exhibit A,

Healey Decl. at ¶ 6. In this case, Class Counsel initiated the litigation here pursuant to a 40% (*Id.* at ¶ 5) contingency agreement, but seeks a significant reduction from that contractual amount, down to roughly 11.8% of the total value of settlement consideration, or 33 1/3% of the Common Fund plus 1% of the monetary value of the credits provided under the Settlement Agreement. Because the contractual fee provision is greater than the amount sought here, this factor supports finding the request is at market rate.

### 2. Cases Throughout the Seventh Circuit Support the Fee Request.

The second inquiry seeks the guidance of other class action matters. Here, the caselaw and evidence provided establish that the requested percentage is at or below the market rate. Lawyers who recover a common fund are "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478; *see also Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("courts in the Seventh Circuit "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.") (citing *Synthroid*, 264 F.3d at 718) *accord Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("[T]he district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). The percentage method is employed by "the ***vast majority*** of courts in the Seventh Circuit (like other Circuits)," rather than the lodestar method. *Florin*, 34 F.3d at 566 (emphasis added); *cf. Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) (Herndon, J.) ("When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis.").

The Seventh Circuit itself has specifically noted that the typical contingent fee is between 33 and 40 percent. *Martin v. Caterpillar Inc.*, No. 07-CV-1009, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) (citing *Gaskill*, 160 F.3d at 362, which upheld a 38% award of a $20 million

settlement); *Harzewski v. Guidant Corp.*, No. 05-cv-01009, ECF No. 194 (S.D. Ind. Sept. 10, 2010) (awarding 38% of the common fund); *Young v. Cnty. of Cook*, No. 06-CV-552, 2017 WL 4164238, at *6 (N.D. Ill. Sept. 20, 2017) (awarding 33.33% of $52 million common fund and overruling objections calling for sliding scale approach); *Spano v. Boeing Co.*, No. 06-cv-743-NJR-DGW, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016) ("A one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law.") (internal citations omitted); *In re Dairy Farmers of Am., Inc*., 80 F.Supp.3d 838, 845-47 (N.D. Ill. 2015) (awarding one third plus expenses of $46 million common fund); *Standard Iron Works v. ArcelorMittal*, No. 08CV-5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) ("The Court finds that a 33% fee [of $163.9 million common fund] comports with the prevailing market rate for legal services of similar quality in similar cases."); *Beesley*, 2014 WL 375432, at *4 (awarding one-third of common fund); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc*., No. 11-CV-592-WMC, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013) (same); *George v. Kraft Foods Glob., Inc*., No. 1:07-CV-1713, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (same); *City of Greenville v. Syngenta Crop Prot., Inc*., 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (awarding one-third of $105 million settlement plus roughly $8.5 million in costs and noting that "[w]here the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (awarding one-third of common fund); *Will*, 2010 WL 4818174, at *4 (same); *Martin*, 2010 WL 11614985, at *2 ("[C]ourts in the Seventh Circuit award attorney fees 'equal to approximately one-third or more of the recovery.'").

9

Courts outside of the Seventh Circuit have largely reached the same result, as independent studies of class action litigation nationwide have come to a similar conclusion. *See* Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. OF EMPIRICAL LEGAL STUDIES 27-78, 35 (March 2004); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) (citing*, inter alia*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 958 (E.D. Tex. 2000)); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 2015 WL 4875464, at *13 (E.D. La. 2015) (holding one-third fee is "roughly in line with other percentage awards that courts in this Circuit have approved."); *Burford v. Cargill, Inc.*, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) (approving 33.33 percent); *Jenkins v. Trustmark Nat. Bank*, No. 05-0283, 2014 WL 1229661, at *13 (S.D. Miss. Mar. 25, 2014) (approving 33.33 percent; "[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third").

Here, Class Counsel seeks an award of $989,333.33, which represents just 11.8% of the total economic value of the settlement, or 33 1/3% of the Common Fund plus one percent of the expected $5.8 million in credits. Critically, Class Counsel has <u>not</u> sought to treat its payment to Local Counsel, Fitch Even,[4] as an expense. Rather, Class Counsel will bear that reduction itself, so as <u>not</u> to reduce the Common Fund by the additional approximate amount of $200,000. Thus, the present fee application is well supported by substantial law, both within and without the Seventh Circuit.

---

[4] Local Counsel's fee is 20% of Class Counsel's fee. The lawyers of Fitch Even have provided invaluable service to the Class as local counsel in this matter. They have significant experience before this Court and within this Circuit in significant commercial litigation matters. (ECF No. 35, Ex. A-6) (Fitch, Even, Tabin & Flannery LLP firm resumes); *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2008 WL 4681369, at *10 (E.D. La. Oct. 17, 2008) (finding lead counsel and liaison counsel adequate based on their respective resumes establishing their experience, knowledge of applicable law, record of significant recoveries on behalf of claimants, and the resources they committed to the action).

### 3. The Quality of Legal Services Rendered.

The final factor courts look to in determining if the requested percentage fee is appropriate is the quality of the legal services provided. First, the results were strong. Based on the results of this resolution, negotiated against the highly-qualified, national attorneys of Latham & Watkins, Class Counsel submits that its performance had to be of high quality in order to achieve the settlement. The present Court graciously remarked that the Motion for Preliminary Approval filed by Class Counsel was "extensive" and "thorough." Therefore, Class Counsel respectfully believes the quality of its performance justifies the requested fee and costs award.

In this case, the Class and its Counsel had both the capacity and the willingness to risk the expense of a lengthy battle that could have, potentially, resulted in no recovery. It is appropriate to compensate that risk with a commensurate award, so that firms will be appropriately incentivized to take on risk to pursue cases that, if brought one-by-one, would be overly-burdensome for the Court system, promoting the purpose of class litigation under Federal Rule 23.

Moreover, Class Counsel's commitment to this case has had an important impact for the approximate thousand exhibitors at the HIMSS 20 conference, providing them a real benefit with no obligation of any additional purchase. Current and future participants will enjoy the significant affirmative relief provisions of this settlement for the foreseeable future, obtaining credits for future HIMSS conferences.

In summary, the Class has obtained a significant recovery, reflecting most of the consideration lost to HIMSS as a consequence of the conference's cancellation, while simultaneously confronting the potential application of the subject *force majeure* provision, which Defendant argues required the complete dismissal of the present action.

Second, the Class is represented by highly qualified lawyers as measured by real-world court victories and experience. By way of example, the lawyers of Hedrick Kring, PLLC have

obtained multiple eight-figure jury verdicts since 2017 in heavily contested commercial litigation matters. In December 2017, Peyton Healey was lead counsel for two entities in a multi-plaintiff commercial trial that resulted in a $98 million verdict, the 22nd largest jury verdict of the year. Joel Bailey was lead counsel in a $20 million verdict on a heavily contested commercial matter less than a year later. Hedrick Kring currently serves as co-counsel in the prosecution of an oil and gas royalty underpayment case where the class was certified over the objection of the defendant, as well as serving as co-counsel in the prosecution of a consumer protection class action alleging defects in a flushable wipe product, among a number of other class action matters. Exhibit A, Healey Decl. at ¶ 3.

Similarly, the lawyers of Fitch Even, Local Counsel in this case, have substantial experience before this Court, courts throughout the Seventh Circuit, and across the country. They have a national litigation and trial practice that focuses on intellectual property and commercial and technology disputes. While the vast majority of intellectual property disputes settle before trial, Fitch Even has obtained numerous multimillion dollar verdicts for its clients in federal courts throughout the country. In addition, with its firm headquartered in Chicago, Fitch Even regularly appears as lead and local counsel before this Court, and many of its attorneys are members of the Court's trial bar. The firm resumes of Hedrick Kring and Fitch Even are attached hereto as Exhibits A.1 and A.2, respectively.

As demonstrated above, a roughly one-third fee is a common benchmark in private contingency fee cases, and this case in particular, with its unique risks, untested theories of recovery, uncertainty of result, and capable representation by highly qualified class counsel justifies this market rate. This is particularly true since Class Counsel's requested recovery is just 11.8% of the value of the total benefit to the Class, which includes both cash and credit portions,

as required. PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, § 3.13(b). Therefore, because Class Counsel is qualified, experienced, and has shown itself capable of prosecuting this action, this element is satisfied.

## V. APPROVAL OF COSTS.

Class Counsel has advanced the amount of $8,504.15 and it respectfully requests reimbursement, as the law allows. *See Mills*, 396 U.S. at 392. The expenses that may be reimbursed from the common fund encompass "all reasonable" litigation-related expenses. *See Trustees v. Greenough*, 105 U.S. 527, 533 (1882). Because Class Counsel proceeded on a contingent-fee basis with a high risk of no recovery, it had a strong incentive to keep expenses at a reasonable level.

Here, the costs are largely attributable to ordinary and necessary costs, such as filing fees, costs incurred in connection with legal research, and mediation costs. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 570 (finding error in district court's decision not to reimburse class counsel for LEXIS and Westlaw expenses). Class Counsel has submitted an itemized list of expenses for this Court's consideration, a true and correct copy of which is attached hereto and incorporated by reference as Exhibit A.3, which they respectfully request the Court approve.

## VI. SERVICE AWARDS.

Lead Plaintiffs HatchMed and Novarad have been active, hands-on participants in this litigation, expending significant amounts of their own time to benefit the Class. Exhibit A, Healey Decl. at ¶¶ 11-12. Each came forward to initiate litigation against HIMSS. HatchMed has responded to informal discovery, including document requests and interrogatories; reviewed and approved pleadings; assisted with discovery; attended mediation; and was deeply involved in settlement negotiations. In light of HatchMed's faithful commitment to the Class, Class Counsel requests that it receive the amount of $8,860.00 from the Settlement Fund. *Id*. at ¶ 11.

Novarad initially filed suit against HIMSS, going it alone, until joining the present lawsuit to assist in achieving the substantial benefit provided the Class. *Id*. at ¶ 11. It spent $6,710.00 in hourly attorneys' fees pursuing these matters, as is established by the Declaration of Dan Brough, a true and correct copy of which is attached hereto as Exhibit B. Accordingly, Class Counsel respectfully requests that Novarad receive $6,710.00 as reimbursement for its out-of-pocket costs plus $23,950.00 as a service award (for a total of $30,660) from the Settlement Fund. Exhibit B, Brough Decl. at ¶ 5.

In sum, the total award for all Lead Plaintiffs represents less than 1% of the total value of the settlement. Awards of $25,000 for a named plaintiff award and total named plaintiff awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable cases. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding award of $25,000 to class representative); *Cook v. McCarron*, No. 92-CV-7042, 1997 WL 47448, at *19 (N.D. Ill. 1997) (awarding $25,000 incentive award); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 to each of the three named plaintiffs); *Nolte v. Cigna Corp.*, Case No. 07-2046, Doc. 413 at 9 (C.D. Ill. Oct. 15, 2013) (awarding $25,000 to each of five named plaintiffs).

Nor do the awards and reimbursement for each of the Lead Plaintiffs' costs and expenses, time, effort, and attorneys' fees actually incurred, provide any basis to conclude that the Settlement grants preferential treatment to any Settlement Class Member. Incentive awards are justified when necessary to induce individuals to become named representatives. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). When determining whether and how much to award as an incentive for a named plaintiff, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation. *Id*. Here, each Lead

Plaintiff's award is 80% of its respective claim in addition to the recovery otherwise provided to Settlement Class Members. This award is more than justified by the reputational risk each Lead Plaintiff took when they filed suit against HIMSS, a critical, industry-wide voice in the healthcare information space. Being on the "wrong side" of such an important industry player was a legitimate risk for both Lead Plaintiffs, who are each heavily invested in the healthcare space. Moreover, Lead Plaintiffs have expended significant time, effort, and expense pursing their claims, including conducting an investigation, reviewing documents, and working with Class Counsel. Exhibit A, Healey Decl. at ¶¶ 11-12; Exhibit B, Brough Decl. Additionally, the incentive awards are consistent with amounts commonly awarded by courts within this Circuit. *Niedert*, 142 F.3d at 1016 ($25,000 to class representatives); *Hale*, 2018 WL 6606079, at *15 (same); *Spano*, 2016 WL 3791123, at *4 (awarding $25,000 to two representatives and $10,000 to a third); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV-2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012) ($25,000 to class representatives); *Beesley*, 2014 WL 375432, at *4 (awarding $15,000 and $25,000); *Will*, 2010 WL 4818174, at *4 (awarding $25,000, "well within the ranges that are typically awarded in comparable cases"). As such, the Service Awards for Lead Plaintiffs do not constitute a proper ground upon which to conclude that the Settlement grants preferential treatment to any Settlement Class Member, and they should be granted as a result.

## VII. CONCLUSION.

For all the reasons stated herein, Class Counsel requests that the Court approve a fee award of $989,333.33 and a cost award of $8,504.15 to Class Counsel, Hedrick Kring, PLLC, and a Service Award of $8,860.00 to HatchMed and payment of $30,660 to Novarad ($6,710.00 as reimbursement for its out-of-pocket costs plus $23,950.00 as a Service Award) out of the Common Fund. Lead Plaintiffs and Class Counsel respectfully request that the Court grant their motion and provide all other relief, at law or in equity, to which they may be entitled.

Dated: April 12, 2021                        Respectfully submitted,

                                             */s/ Peyton J. Healey*

                                             **Peyton J. Healey**
                                             Texas State Bar No. 24035918 (*admitted*)
                                             **Joshua L. Hedrick**
                                             State Bar No. 24061123
                                             **Jacob B. Kring**
                                             Texas State Bar No. 24062831
                                             **HEDRICK KRING, PLLC**
                                             1700 Pacific Avenue, Suite 4650
                                             Dallas, Texas 75201
                                             (Tel.): (214) 880-9600
                                             (Fax): (214) 481-1844
                                             Peyton@HedrickKring.com
                                             Josh@HedrickKring.com
                                             Jacob@HedrickKring.com

                                             -AND-

                                             Nicholas T. Peters (IL 6279677)
                                             ntpete@fitcheven.com
                                             Nicole L. Little (IL 6297047)
                                             nlittle@fitcheven.com
                                             FITCH, EVEN, TABIN & FLANNERY LLP
                                             120 South LaSalle Street, Suite 2100
                                             Chicago, Illinois 60603
                                             Telephone: (312) 577-7000

                                             **PRELIMINARILY APPROVED AS**
                                           **CLASS COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I, Peyton J. Healey, certify that on April 12, 2021 a true and correct copy of the foregoing

was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

*/s/ Peyton J. Healey*

Peyton J. Healey
HEDRICK KRING, PLLC
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9600
Facsimile: (214) 481-1844
Email: Peyton@HedrickKring.com

17